UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| FIDELITY & DEPOSIT COMPANY OF MARYLAND, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CAUSE NO.: 1:07-CV-95 |
| JASON G. GATES and CAROL A. GATES, | ) ) ) | |
| Defendants. | ) ) | |

## OPINION AND ORDER

### I. INTRODUCTION

This matter is before the Court on the Motion for Summary Judgment of the Plaintiff, Fidelity & Deposit Company of Maryland ("F&D"), filed on January 28, 2008.[1] (Docket # 17.) The Defendants, Jason G. Gates and Carol A. Gates (collectively, "the Gates"), did not file a timely response, and because the case was approaching a final pretrial conference, the Court conducted a telephone conference on April 17, 2008, to ascertain the status of the matter. (*See* Docket # 23.) At the status conference, Gates' counsel informed the Court that the Gates would not be filing a response and that the Court could proceed to rule based on the current record.

The case involves a claim on an indemnity contract between F&D and the Gates, and the sole issue before the Court is the interpretation and enforcement of an unambiguous contract the Gates executed entitled "Agreement of Indemnity" ("Agreement"). (Pl.'s Br. in Supp. of Its Mot. For Summ. J. (Pl.'s Br.) 1.) Pursuant to the terms of the Agreement, F&D seeks to recover the amount it has paid on payment and performance bond claims asserted against it as surety for

---

[1] The Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

Industrial Piping & Engineering Corporation ("Industrial Piping"), and for expenses and fees incurred as surety. (Pl.'s Br. 1.) The Agreement also provides for the recovery of attorneys' fees, and therefore F&D also requests that the Court order the Gates to reimburse F&D pursuant to the terms of the Agreement for reasonable attorneys fees expended. (Pl.'s Br. 1.) Because the Gates do not dispute the record F&D submitted, the Court will proceed to briefly recount the material facts.

## II.  STATEMENT OF MATERIAL FACTS

F&D issues various bonds, including payment and performance bonds. (Compl. ¶ 7; Hauck Aff. ¶ 3.) F&D issued bonds in connection with construction projects that Industrial Piping performed. (Compl. ¶¶ 11, 14, 17, 20, 23; Hauck Aff. ¶ 4.) On or about July 1, 2002, the Gates executed an Agreement of Indemnity, as indemnitors, with F&D in connection with all bonds issued by F&D to Industrial Piping. (*See generally* Compl. Ex. A; *see also* Hauck Aff. ¶ 5; Answer ¶ 10.) In particular, the pertinent provisions of the Agreement state as follows:

> The Contractor and Indemnitors shall exonerate, indemnify, and keep indemnified the Surety from and against any and all liability for losses and/or expense of whatsoever kind or nature (including, but not limited to, interests, court costs and counsel fees) and from and against any and all such losses and/or expenses which the Surety may sustain and incur . . . .
>
> * * *
>
> The Surety shall have the right to adjust, settle or compromise any claim, demand, suit or judgment upon the Bonds, unless the Contractor and the Indemnitors shall request the Surety to litigate such claim or demand, or to defend such suit, or to appeal from such judgment, and shall deposit with the Surety, at the time of such request, cash or collateral satisfactory to the Surety in kind and amount, to be used in paying any judgment or judgments rendered or that may be rendered, with interest, costs, expenses and attorneys' fees, including those of the Surety.

(Compl. Ex. A; Hauck Aff. Ex. A.)

2

Thereafter, F&D issued various Bonds, including Performance Bonds, Payment Bonds, Bid Bonds, and Maintenance Bonds, on behalf of Industrial Piping in connection with a series of projects referred to as the "Jay Project," the "DeKalb Project," the "2004 Mechanical Project," the "Scott Academy Project," and the "Abbett School Project." (Pl.'s Br. 3-6.) When disputes arose from Industrial Piping's failure to perform under the respective contracts, F&D paid Industrial Piping's suppliers and subcontractors in accordance with the Payment Bond obligations. (Pl.'s Br. 6-7.)

After payment under the Bonds, and after recovering some contract retainage from the owners of the projects, F&D sustained a net loss of $731,356.17 as surety for Industrial Piping, not including attorney fees. (Hauck Aff. ¶ 37.) F&D made a demand on the Gates to satisfy this amount pursuant to the Agreement, but the Gates have refused, giving rise to this action. (Hauck Aff. ¶38.)

### III.  STANDARD FOR SUMMARY JUDGMENT

Summary judgment may be granted only if there are no disputed genuine issues of material fact. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). When ruling on a motion for summary judgment, a court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Id.* The only task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). If the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmoving party, summary judgment may not be granted. *Payne*, 337 F.3d at 770. A court must construe the record in the light most favorable to

the nonmoving party and avoid "the temptation to decide which party's version of the facts is more likely true[,]" as "summary judgment cannot be used to resolve swearing contests between litigants." *Id.*  However, "a party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial." *Id.* at 771.

## IV.  DISCUSSION

The Gates do not contest any of the material facts advanced by F&D (including the fact that they executed the Agreement), or the assertion that they are liable to F&D as a matter of law for the costs and expenses F&D incurred on the payment bonds when Industrial Piping failed to pay its subcontractors and suppliers.

It is undisputed that Indiana law governs this action.  *See generally Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487 (1941).  In Indiana, indemnification agreements are governed by the same rules as other contracts.  *Beaver v. Grand Prix Karting Ass'n, Inc.*, 246 F. 3d 905, 909 (7th Cir. 2001) (citing *Plumlee v. Monroe Guar. Ins. Co.*, 655 N.E.2d 350, 359 (Ind. Ct. App. 1995)).  "When a court finds a contract to be clear in its terms and the intentions of the parties apparent, the court will require the parties to perform consistently with the bargain they made."  *Hinc v. Lime-O-Sol Co.*, 382 F. 3d 716, 720 (7th Cir. 2004) (quoting *First Fed. Sav. Bank of Ind. v. Key Mkts, Inc.*, 559 N.E.2d 600, 604 (Ind. 1990)).

By the terms of the Agreement, it is clear that the Gates agreed to indemnify F&D for all losses, costs, and expenses F&D sustained as a result of executing the applicable payment and performance bonds for the Jay Project, DeKalb Project, 2004 Mechanical Project, Scott Academy Project, and Abbett School Project, including those F&D incurred in enforcing the

Agreement.  (*See* Agreement, ¶ SECOND.)  Furthermore, there is no factual dispute that F&D incurred losses in settling the bond claims as surety for Industrial Piping in the net amount of $731,356.17.[2]  (*See* Hauck Aff. ¶ 37.)  Accordingly, because the Gates do not dispute the amounts of the claims or F&D's right to settle those claims, F&D is entitled to the indemnity the Gates promised in their individual capacities under the terms of the Agreement.

## V.  CONCLUSION

Based on the record before the Court, F&D's Motion for Summary Judgment (Docket # 17) is GRANTED.  Moreover, under Federal Rule of Civil Procedure 54(b), there is no just reason for delay and the Court expressly directs the Clerk to enter a judgment in favor of the Plaintiff, Fidelity & Deposit Company of Maryland, and against Defendants, Jason G. Gates and Carol A. Gates, both jointly and severally, in the amount of Seven Hundred Thirty-One Thousand Three Hundred Fifty-Six and 17/100 Dollars ($731,356.17).

The Court contemplates that a separate judgment will be entered for any attorney fees awarded to F&D under Federal Rule of Civil Procedure 54(d)(2).

SO ORDERED.

Enter for this 22nd day of April, 2008.

S/Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge

---

[2] Although at the close of its brief F&D requests $783,221.57 in satisfaction of its net loss (Pl.'s Br. 9, 12), it had previously stated that the net loss was $731,356.17 and cited to the Hauck Affidavit, which attests that "[t]o date, F&D has incurred a net loss of $731,356.17 as surety for Industrial Piping . . . ." (Pl.'s Br. 7; Hauck Aff. ¶ 37). Thus, the Court assumes that F&D simply made a typographical error and awards the net amount reflected in the evidentiary record, $731,356.17.